D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARLTON PALMER,

                Petitioner,                          MEMORANDUM & ORDER

              -against-                              14-MC-1088 (NGG)

UNITED STATES OF AMERICA,

                Respondent.
------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Petitioner Carlton Palmer's pro se motion to expunge his criminal record from his conviction in United States v. Palmer, No. 05-CR-483 (NGG).[1] (Mot. to Expunge (Dkt. 1).) The Government opposes Petitioner's motion, arguing that Petitioner has not established the "extreme circumstances" required to justify an expungement in this case. (Resp. to Mot. to Expunge (Dkt. 4).) For the following reasons, Petitioner's motion is DENIED.

I.      BACKGROUND

On November 4, 2005, Petitioner pled guilty to conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1347 and 1349. (See Min. Entry (Dkt. 42 in 05-CR-483); J. (Dkt. 56 in 05-CR-483).) On February 14, 2006, the court sentenced him to time served. (J.) The court also imposed three years of supervised release, a $100 special assessment, and a $75,078.62 restitution order. (Id.)

---

[1] "There is no practical difference between a request to seal and a request to expunge; courts analyze both under the same standard." Peters v. United States, No. 13-MC-103 (JMA), 2013 WL 3280880, at *1 n.1 (E.D.N.Y. June 27, 2013); see also Ali v. United States, 13-MC-0432 (MKB), 2013 WL 4048498, at *1 n.1 (E.D.N.Y. Aug. 9, 2013) (noting that courts apply the same "stringent standard" for motions to seal or expunge criminal records, and recognizing that "when a petitioner requests expungement, he or she is essentially asking the court to destroy or seal the records of the conviction"). Accordingly, the court will treat Petitioner's motion as a request to expunge his criminal records.

1

On September 5, 2014, Petitioner moved to expunge the record of his 2005 conviction, explaining that he had been "trying to get a job," but that "this issue kept popping [up] on [his] criminal background check." (Mot. to Expunge at 1.) Petitioner also maintains that he wishes to apply for U.S. citizenship and travel to Jamaica, but that he fears deportation because of his past conviction. (Id. at 1-2.) Petitioner affirms that he has "never been involved with the police" since his conviction and sentence. (Id. at 1.)

## II. DISCUSSION

### A. Jurisdiction

Although the Government has not challenged the court's jurisdiction in this case, the court notes that there is a "substantial question" in this circuit of whether federal courts have jurisdiction to expunge records of valid criminal convictions. United States v. DeBerry, No. 05-MJ-62 (HKS), 2013 WL 6816626, at *1-2 (W.D.N.Y. Dec. 20, 2013).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). However, the doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." Id. at 378. In Kokkonen, the Supreme Court limited ancillary jurisdiction of collateral proceedings to instances where it is necessary "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." 511 U.S. at 379-80 (internal citations omitted).

At this time, no constitutional provision or federal statute grants federal courts the power to expunge a criminal conviction on equitable grounds. See Doe v. United States, 110 F.

2

Supp. 3d 448, 453 & n.13 (E.D.N.Y. 2015) (noting that two recent bills in Congress would have created federal expungement authority for nonviolent offenses but that neither advanced to a vote). The question, then, is whether either of the two bases of ancillary jurisdiction recognized in Kokkonen authorize courts to do so.

The Second Circuit held, pre-Kokkonen, that expungement of arrest records "lies within the equitable discretion of the court[.]" United States v. Schnitzer, 567 F.2d 536, 539 (2d Cir. 1977). However, the court in Schnitzer cautioned that "the power to expunge . . . should be reserved for the unusual or extreme case." Id. As examples of such extreme circumstances, the court cited "mass arrests render[ing] a judicial determination of probable cause impossible," or arrests based on a statute later found to be unconstitutional. Id. at 539-40. The court did not indicate whether such discretionary authority includes the power to expunge records of valid convictions. Nor has the Second Circuit revisited the broader issue of ancillary jurisdiction to expunge criminal records after Kokkonen.

Every circuit court since Kokkonen to address whether federal courts have ancillary jurisdiction to expunge a valid criminal conviction has held that they do not. See, e.g., United States v. Field, 756 F.3d 911, 915-16 (6th Cir. 2014) (collecting cases); United States v. Coloian, 480 F.3d 47, 52 (1st Cir. 2007); United States v. Rowlands, 451 F.3d 173, 178 (3d Cir. 2006); United States v. Meyer, 439 F.3d 855, 860 (8th Cir. 2006); United States v. Sumner, 226 F.3d 1005, 1014 (9th Cir. 2000). The Tenth Circuit, in a post-Kokkonen opinion, held that courts do have "inherent equitable authority to order the expungement of an arrest record or a conviction in rare or extreme circumstances," but the court cited as examples only cases where the validity of the underlying conviction was in question. See Camfield v. City of Oklahoma City, 248 F.3d 1214, 1234 (10th Cir. 2001) (citing United States v. Pinto, 1 F.3d 1069

(10th Cir. 1993), which recognized such authority in the context of an "invalidated" conviction, and United States v. Linn, 513 F.2d 925, 927 (10th Cir. 1975), defining the scope of such authority as limited to cases where an "arrest itself was an unlawful one, or where the arrest represented harassing action by the police, or where the statute under which the arrestee was prosecuted was itself unconstitutional").

Nevertheless, one court in this district has recently held that courts do possess ancillary jurisdiction to order the expungement of valid convictions under extreme circumstances. In Doe, Judge John Gleeson granted a petitioner's motion to expunge her valid fraud conviction, holding that such proceedings "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." 110 F. Supp. 3d at 454 n.16 (E.D.N.Y. 2015) (quoting Kokkonen, 511 U.S. at 380).[2] But see DeBerry, 2013 WL 6816626, at *1-2 (denying petitioner's expungement motion on other grounds but questioning the viability of Schnitzer after Kokkonen, and noting the "substantial question" of whether the court had ancillary jurisdiction to expunge a valid conviction).

In sum, it remains an unsettled question in this circuit whether, after Kokkonen, a court may exercise ancillary jurisdiction to expunge a valid criminal conviction on equitable grounds. Ultimately, the court declines to decide the jurisdictional question, because Petitioner has not

---

[2] The court is aware of only two other post-Kokkonen cases from this circuit in which a district court granted a motion to expunge a valid conviction. See United States v. Doe, 935 F. Supp. 478 (S.D.N.Y. 1996) (Chin, J.); United States v. Doe, No. 71-CR-892 (CBM), 2004 WL 1124687 (S.D.N.Y. May 20, 2004). However, in both of those cases the petitioners had been adjudicated youth offenders under the Youth Corrections Act, 18 U.S.C. § 5005, et seq. (repealed 1984), and their convictions had already been "set aside," pursuant to the requirements of the Act. See Doe, 935 F. Supp. at 480-81; Doe, 2004 WL 1124687, at *1, *3; see also United States v. Seibel, No. 99-MC-65 (DC) 1999 WL 681276, at *2 n.2 (S.D.N.Y. June 29, 2004) (Chin, J.) (stating that Doe, 935 F. Supp. 478, was "based in large part upon the Youth Corrections Act"). The Youth Corrections Act does not apply in this case, and Petitioner has not pointed to any other statute that would plausibly grant the court jurisdiction to expunge his conviction.

4

demonstrated the extreme circumstances that would otherwise allow for expungement in this case.

### B. Extreme Circumstances Warranting Expungement

Even assuming that a court has jurisdiction to entertain a motion to expunge a valid conviction, such requests generally are granted "only in extreme circumstances" after "balancing [ ] the equities." Schnitzer, 567 F.2d at 539-40.

Most courts in this circuit to consider such motions have found that difficulties in securing employment do not meet this demanding standard. See, e.g., Stephenson v. United States, --- F. Supp. 3d ---, No. 10-MC-712 (RJD), 2015 WL 5884810, at *6-7 (E.D.N.Y. Oct. 8, 2015) (holding that difficulty obtaining a nursing license was not an exceptional circumstance warranting expungement); United States v. Gomelskaya, No. 14-MC-1170 (SJ), 2015 WL 4987838, at *1 (E.D.N.Y. Aug. 19, 2015) ("[A] criminal record's adverse effects on a person's employment do not constitute grounds for expungement."); United States v. Daisley, No. 95-M-059 (SMG), 2006 WL 3497855, at *1 (E.D.N.Y. Dec. 5, 2006) ("[C]ourts have consistently held that adverse employment consequences are not sufficient grounds . . . to warrant expunction . . . ."); United States v. Lau, No. 94-CR-1682 (LAP), 2003 WL 22698810, at *3 (S.D.N.Y. Nov. 14, 2003) ("Courts have consistently held that economic hardship or negative employment consequences do not constitute . . . 'extreme circumstances[.]'"); United States v. Melton, No. 90-CR-378 (MHD), 2001 WL 345217, at *1 (S.D.N.Y. Apr. 9, 2001) (noting that desire to find employment "has been almost uniformly rejected as a basis for expungement").

Likewise, the citizenship and immigration consequences of a criminal record have been held not to be exceptional circumstances warranting expungement. See Sandy v. United States,

5

No. 08-MC-306 (RML), 2008 WL 4865993, at *2 (E.D.N.Y. Nov. 7, 2008) ("Petitioner's concerns that his arrest record may thwart his efforts to become a United States citizen are [ ] not sufficiently exceptional to justify expungement." (citing United States v. McFadzean, No. 93-CR-25 (CSH), 1999 WL 993641, at *4 (S.D.N.Y. Nov. 2, 1999); Akwurah v. United States, No. 99-MISC-45 (ILG), 1999 WL 390832, at *1 (E.D.N.Y. Mar. 31, 1999))). The same is true for travel restrictions. Prophete v. United States, No. 10-MC-0811 (JS), 2011 WL 5027172, at *1 (E.D.N.Y. Oct. 20, 2011).

Petitioner has not even suggested that he faces difficulties more extreme or unjust than those faced by any other person with a criminal record. See Sandy, 2008 WL 4865993, at *2 ("While petitioner may indeed face questioning in the future upon reentering the United States, the same is true of anyone with a criminal record."). Petitioner does not profess his innocence or claim that his conviction was unlawful or the result of government misconduct. See Schnitzer, 567 F.2d at 540; United States v. James, No. 97-CR-715 (ILG), 2003 WL 21056989, at *2. Nor has he shown that he would be employed were it not for his conviction. Instead, he merely states that his conviction keeps "popping [up] on [his] background check." (Mot. to Expunge at 1.) Even in Doe, the petitioner was able to show numerous specific examples of instances where she was hired for jobs and only subsequently fired once background checks were conducted. 110 F. Supp. 3d at 451-52. Accordingly, the court finds that Petitioner has failed to show the extreme circumstances required to justify expungement of his criminal record.

Although not relevant to Petitioner's deportation concerns, the court notes that New York State law prohibits the denial of employment based on a criminal record, unless there is a "direct relationship" to the offense of conviction. See Gomelskaya, 2015 WL 4987838, at *2 (citing N.Y. Exec. Law § 296(15); N.Y. Correct. Law §§ 750-753). Even in the case of a direct

relationship, a potential employer must consider a number of other factors, including time elapsed since the offense, proof of rehabilitation or good conduct, and the age of the applicant. See N.Y. Correct. Law § 753. If an applicant is ultimately denied employment, he is entitled to a written statement explaining the reasons for denial. See id. § 754. Furthermore, despite the fact that Petitioner was convicted of a federal crime, he may seek a Certificate of Relief from Civil Disabilities in New York State Supreme Court. See id. § 704; see also In re Helmsley, 575 N.Y.S.2d 1009 (Sup. Ct. 1991). Such a certificate "shall create a presumption of rehabilitation," and an employer is required to consider it. N.Y. Correct. Law § 753(2).

* * *

In closing, the court expresses concern that Doe may give rise to a proliferation of expungement motions in the district courts, with inconsistent results for petitioners. Absent clear guidance from the Second Circuit, convicted felons may be led to harbor false hopes that their valid criminal records might someday be wiped clean upon a showing of some unknown degree of employment difficulty. It would be helpful, therefore, if the Second Circuit would clarify whether courts have jurisdiction over motions to expunge valid criminal records, and, to the extent jurisdiction exists, under what circumstances such relief may be granted. In the meantime, Petitioner may wish to seek review of this decision by the circuit court.

III. **CONCLUSION**

For the reasons stated above, Petitioner's motion to expunge his criminal record is DENIED WITHOUT PREJUDICE. Petitioner may submit a future motion in the event that his circumstances materially change.

SO ORDERED.

Dated: Brooklyn, New York
      February 8, 2016

/S/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge